```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF VIRGINIA

                     Alexandria Division
```

ALEXANDRA WOLF, et al.,        )
                               )
    Plaintiffs,                )
                               )
         v.                    )    1:06cv945 (JCC)
                               )
FAUQUIER COUNTY BOARD OF       )
SUPERVISORS, et al.            )
                               )
    Defendants.                )

This matter comes before the Court on Defendants' motion to dismiss Dr. Mark Simonds. For the following reasons, the Court will grant Defendants' motion.

## I. Background

Plaintiffs Alexandra Wolf ("Wolf") and her two children, Rachel, and C.J. Wolf ("children"), have brought this action to recover for alleged violations of their constitutional rights arising from alleged removal of the children from Wolf's custody, and other actions taken by the Fauquier County Department of Social Services ("DSS"). Plaintiffs have brought action against the Fauquier County Board of Supervisors, as well as Mimi deNicolas ("deNicoloas"), Stephanie Duncan ("Duncan"), LaTeeka Tutwiler ("Tutwiler"), Beth Stevens ("Stevens"), and Chrysalis Counseling Center, P.C. ("Chrysalis"). The facts, as alleged by Plaintiffs, are as follows.

In August 2005, Wolf was suffering from panic attacks, and sought treatment at Chrysalis with Stephens, a life coach. During a session with Stephens, Wolf informed Stephens of stress she was currently undergoing, and described how she had, in the past, considered suicide. Wolf specified that she was not currently considering suicide and did not intend to harm herself or her children.

After this conversation, on August 17, 2005, Stephens and Chrysalis contacted the Fauquier County Sheriff's Office ("Sheriff's Office") and deNicolas at the DSS and informed them that Wolf was contemplating suicide and a threat to her children. Once aware of this complaint, Wolf contacted her attorney, David Silek ("Silek") and asked for his assistance. Silek contacted the Sheriff's Office and convinced the Office to terminate its investigation, and that Wolf posed no threat to herself or her children. The next day, three DSS social workers--Tutwiler, Duncan, and deNicolas--were sent to the Wolf residence. When they arrived, Wolf greeted them at the door with her attorney Silek on the phone. Silek spoke to deNicolas and informed her that Wolf was not suicidal and posed no threat to her children.

After meeting with the social workers, Wolf signed a form permitting the children to be placed with a friend pending an additional meeting with the social workers, but noted a written objection. Wolf and Silek then met with the social

workers the next morning, and explained why they believed the information given to the DSS was false. The social workers then informed Wolf that the children would be returned if she was cleared by a psychiatrist.

The social workers filed a petition in Faquier County Juvenile & Domestic Relations Court ("JDRC") to have a guardian *ad litem* appointed to supervise Wolf and monitor her fitness as a parent, which the court granted. The case was dismissed after further negotiations with Silek, and the completion of a psychiatric evaluation which determined that Wolf did not pose a danger to herself or the children.

On August 16, 2006 Plaintiffs filed the instant action. On October 16, 2006 this Court dismissed claims for malicious prosecution and civil conspiracy. Plaintiffs then amended the complaint. On December 12, 2007 this Court dismissed the malicious prosecution claim from the amended complaint. On May 11, 2007 Plaintiffs entered a second amended complaint adding a medical malpractice count against Doctor Mark Simonds ("Simonds") as a defendant. The basis for the medical malpractice claim is that Stephens falsely told Simonds, who is a licensed psychiatrist, that Wolf had threatened to kill herself and her children and requested his advice.[1] Simonds did not speak to

---

[1] The issue of falsity is a question of fact that has not been resolved. For the purposes of a 12(b)(6) motion, the Court will assume that the facts as pled are true, and thus proceed as if Stephens did in fact falsely report the incident to Dr. Simonds.

3

Wolf, but rather accepted Stephens's allegation as true and told her to report the incident to law enforcement and the DSS. Plaintiffs allege that Simonds violated his professional duties by "knowingly giving advice in his professional capacity about a patient with whom he had not met based on information from an individual he knew was not a mental health professional" by instructing her to contact law enforcement and the DSS. (Second Amend. Compl. at ¶ 121). Defendants move to dismiss Simonds as a Defendant on the ground that Plaintiffs' second amended complaint fails to state a cause of action for which relief may be granted. This motion is currently before the Court.

## II. Standard of Review

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint, *see Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994), and should be denied unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *De Sole v. United States*, 947 F.2d 1169, 1177 (4th Cir. 1991) (citations omitted); *see also Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).[2]

---

[2] Also at issue in the parties' pleadings was the issue of whether the Court may properly consider evidence submitted by the non-movant and convert the motion to dismiss to a motion for summary judgment. The Court need not resolve this issue, as consideration of the evidence submitted by Plaintiffs not necessary to determine whether a physician-patient relationship was properly pled. Accordingly, the Court will proceed with a 12(b)(6) analysis.

### III.  Analysis

To state a cause of action for medical malpractice in Virginia, a plaintiff must plead: (1) existence of a legal duty, (2) a breach of that duty, and (3) that this breach proximately caused plaintiff's injuries.  *Delk v. Columbia/HCA Healthcare Corp.,* 523 S.E.2d 826, 830 (Va. 2000).  A legal duty only exists when a physician-patient relationship is present, and such a relationship arises from "a consensual transaction, a contract, express or implied, general or special."  *Lyons v. Grether,* 239 S.E.2d 103, 105 (Va. 1977); *see also Didato v. Strehler,* 554 S.E.2d 42, 47 (Va. 2001).  Whether this relationship was created turns upon "a determination whether the patient entrusted his treatment to the physician and the physician accepted the case."  *Lyons,* 239 S.E.2d at 105.

Plaintiffs' second amended complaint fails to allege a set of facts which would arise to a physician-patient relationship if proven true.  No consensual transaction, contract, or other relationship between the two is alleged.  In fact, it is apparent in the second amended complaint that Dr. Simonds neither met with nor offered medical services to Wolf.  To counter this fact, Plaintiffs claim that under Virginia law the nature of a consensual transaction depends not upon a meeting of the minds, but upon respective separate consents between doctor and patient, citing *Harris v. Kreutzer,* 624 S.E.2d 24, 29-

30 (Va. 2006). While this assertion is technically true, *Harris* offers little support to Plaintiffs' position. In *Harris,* the Supreme Court merely found that a physician-patient relationship existed when a Court ordered treatment by that physician and there was not "consent" *per se. Id.* Furthermore, the complaint at issue in *Harris* alleged physical injury caused by health care services actually rendered by the defendant once this relationship was established. *Id.* Thus, the scenario presented in *Harris* is far different from the instant action, where no health care service was actually provided to Wolf by the physician being sued, and no relationship existed between them, other than Simonds's advice to Stephens that she should contact the authorities. Plaintiffs also rely upon *Lyons* in argument that a physician-patient relationship may be formed even if treatment never occurs. *Lyons* also fails to support Plaintiffs' position, because it involved a mutually contracted physician-patient relationship and then improper refusal to treat. *Lyons,* 239 S.E.2d at 105-06. There was no mutual agreement for treatment between Dr. Simonds and Wolf in this case.

Plaintiffs attempt to remedy these inadequacies by introducing a theory of vicarious liability. Plaintiffs proffer that "[b]ecause he was acting as his capacity as a psychiatrist engaged by Chrysalis when he advised Ms. Stephens, Dr. Simonds is deemed under Virginia law to be the same health care provider as

6

Chrysalis." (Pls.' Opp. Br. at 5).  Plaintiffs claim that under Virginia law, "there is no legal distinction between individual and organizational health care providers," citing *Castillo v. Emergency Medicine Assoc.,* 373 F.3d 643, 649 (4th Cir. 2004). This conclusion is legally incorrect, and wholly unsupported by *Castillo*--which merely states that organizational health care clinics may be sued for malpractice in the same manner as individual doctors.  *Id.*  It certainly does not impute a physician-patient relationship on every doctor affiliated with an organizational clinic.

Finally, Plaintiffs present the theory that Dr. Simonds created a physician-patient relationship by voluntarily involving himself in Wolf's care without her consent.  In such an instance, a claim for medical malpractice turns on whether "'health care' was provided by a 'health care provider' to a 'patient' which allegedly resulted in personal injury."  *Harris* 624 S.E.2d at 31.[3]  "Health care" is defined by the Virginia Code as "any act, or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical diagnostic, care, treatment, or confinement."  *Didato,* 554 S.E.2d at 46

---

[3] It is noteworthy that the quoted terms are legal terms of art, subject to the legal definitions of Va. Code § 8.01-581.1.  For the purposes of this litigation, neither party disputes that Dr. Simonds is a "health care provider" or that Wolf was a "patient."  Nor is it disputed that "health care" was provided to Wolf by Chrysalis Counseling Center.  However, it is disputed whether "health care" was provided to Wolf by Dr. Simonds.

7

(quoting Va. Code § 8.01-581.1).  Plaintiffs argue that, under *Didato,* failure to perform acts which "should have been performed" in the course of treatment may also arise to medical malpractice.  Again, this is true, but not relevant to this action.

Unlike *Didato*, the instant action does not allege that Dr. Simonds negligently overlooked vital steps in the course of treatment that resulted in harm to the Plaintiffs.  *Id.* at 47-48. Rather, Plaintiffs seek to impose liability on the theory that advising Stephens of a reporting requirement constituted active involvement in Wolf's treatment, and rendering this advice without diagnosis or other medical treatment prior to advising her of the reporting requirement constitutes professionally negligence.[4]  Put differently--Plaintiffs seek to impose malpractice liability for non-medical professional advice given to a clinical employee on the theory that a medical diagnosis "should have been performed" prior to doing so.

This theory for a cause of action is unsupported, and does not square with Virginia precedent.  *See, e.g., Lyons,* 239 S.E.2d at 105-06; *Didato,* 554 S.E.2d at 46.  Plaintiffs provide

---

[4]The allegations suggest professional negligence on the theory that Dr. Simonds was "acting as a physician" when he advised Stephens to contact the authorities after she informed him of her belief that Wolf intended to harm herself and her children.

8

no support for this theory of liability.[5]  Nowhere in the complaint are facts alleged that would constitute an "act, or treatment ... which should have been performed or furnished ... during the patient's medical diagnostic, care, treatment, or confinement" by Dr. Simonds.  The relevant allegations simply state advice given to Stephens on a procedural question.  These allegations simply do not square with the accepted elements of medical malpractice law, and Plaintiffs' complaint cannot stand.  Accordingly, Plaintiffs have failed to allege a set of facts, which proven true, would result in the creation of a physician-patient relationship, and the Court will dismiss Dr. Simonds.

### IV.  Conclusion

For the foregoing reasons, Defendants' motion to dismiss will be granted.

July 10, 2007                    _____/s/_____
Alexandria, Virginia             UNITED STATES DISTRICT COURT JUDGE

---

[5] *See generally, Didato,* 554 S.E.2d 42; *Harris,* 624 S.E.2d 24 (each of these cases involved actual medical treatment by the defendant physician); *see also Lyons,* 239 S.E.3d 103 (involving a contractually created physician-patient relationship and injuries resulting from refusal to treat).  The Court is unaware of any case that supports the notion that a physician may be sued for rendering non-medical procedural advice to a clinician related to a patient that he never treated.  Likewise, none of the cases provided support an assumption of a physician-patient relationship resulting from the rendering of such procedural advice.

9